(88 Misc. Rep. 250)

### PEOPLE ex rel. B. D. PIERCE, JR., CO. v. SOHMER, State Comptroller, et al.

(Supreme Court, Adjourned Special Term, Albany County. December, 1914.)

MANDAMUS (§ 105*)—PEREMPTORY WRIT—HIGHWAYS.

  Where a contractor's work on a state highway has been approved from month to month by those charged with the duty of inspection and supervision, and has been reported as complete on a final inspection, and a certificate to that effect been issued by the department charged with the responsibility of acceptance, the contractor may by mandamus compel acceptance of the work by the commissioner of highways and payment by the comptroller.

  [Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 223; Dec. Dig. § 105.*]

Mandamus by the People, on the relation of the B. D. Pierce, Jr., Company, against William Sohmer, as Comptroller of the State, and John N. Carlisle, as Commissioner of Highways of the State. Ordered that peremptory writ be granted.

Eugene D. Flanigan, of Albany, for relator.

James A. Parsons, Atty. Gen. (James J. Barrett, Deputy Atty. Gen., of counsel), for comptroller and commissioner of highways.

RUDD, J. The contract for the construction and improvement of this highway was entered into June 17, 1911. The state reserved the right to make such changes in the plans and specifications as might from time to time seem to be necessary. The state also reserves the right to make such additions, deductions, or changes as it deems necessary, making an allowance or deduction therefor at the relative prices of the proposal for this work, and this contract should in no way be invalidated thereby. Certain changes were from time to time made, and the contract was modified. A supplemental contract was entered into May 8, 1912, and a still further supplemental or special agreement was made under date of June 12, 1913.

Certain work was done. Certain materials were furnished. Monthly estimates were made. The construction of the work was supervised by the representatives of the state in the persons of division engineers, and in June, 1913, the contractor notified the state authorities

that the work was completed. The state caused official inspection to be made, and on the 22d day of July, 1913, the state commissioner of highways issued an order accepting the highway. At this time there was due to the contractor $15,559.11, including certain percentages of monthly estimates which had been retained by the state in accordance with the terms of the contract. Demand for the payment of the sum alleged to be due has been made upon the comptroller and the sum demanded as due has not been paid.

The state commissioner of highways in effect states that, while this highway was accepted in July, 1913, the acceptance was void for the reason that it was based upon inaccurate and incorrect information, and that as a matter of fact the highway has not been completed by the contractor. The commissioner of highways states that after the acceptance of July, 1913, he caused an investigation to be made, resulting as he says in a report to the effect that the work had been properly done, and because of that report, in July, 1914, the commissioner of highways made an order canceling the contract and rescinding the former acceptance of the work. There is no allegation of fraud or deceit.

The report, dated June 5, 1914, upon which the commissioner of highways bases his order rescinding the former acceptance of the work, is to the effect that the specifications were not in all respects carried out. If that was the fact, it could have been ascertained prior to the acceptance of the work in July, 1913, and it could have been known and must have been known to the representatives of the state, the inspectors and division engineers, during the progress of the work. If it was known, that was the time to call the matter to the attention of the contractor. Monthly estimates should not have been given, if such was the fact. The state authorities should not have allowed the road to proceed a single week under such conditions. The state should be bound by the acts of its inspectors and division engineers equally as the contractor is bound and controlled.

Almost a year elapsed between the formal official acceptance of the road in July, 1913, and the order rescinding acceptance in July, 1914, during all of which time the road has been in use for all kinds of traffic. There being no fraud alleged in the carrying out of the work by the contractor, the state is bound by the official acceptance of the work made in July, 1913, which acceptance was based upon investigation made by the state representatives, resulting in reports from engineers charged with the responsibility of making that investigation.

The acceptance of the road was not an idle ceremony, and it must be assumed was not done thoughtlessly or stupidly. It was done in accordance with the law and with the provisions of the contract, and it is binding upon the party who did it. When a contractor's work is apparently being done to the satisfaction of the state, as evidenced by the approval, from month to month as the work progresses, of those charged with the duty of inspection and supervision, and finally, when the contractor announces to the state a completion of the work, and the state finally and formally inspects and examines as to whether completion has been had, and the report of such inspectors is to the

effect that the work is complete, and then as a final evidence the department with the responsibility of acceptance certifies to that effect, what more can the contractor do, or can he be expected to do?

After using the road for almost a year, it is not just or fair that some succeeding official should then determine that he would rescind the acceptance. The money due the contractor under the acceptance should be paid. An order may be entered granting the writ of peremptory mandamus for which application is made.

Ordered accordingly.